**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ORDNANCE TECHNOLOGIES (NORTH AMERICA) INC., ) ) ) Plaintiff, ) ) vs. ) ) RAYTHEON COMPANY, ) ) Defendant. ) _____ ) ) RAYTHEON COMPANY AND ) RAYTHEON MISSILE SYSTEMS, ) ) Counter Claimants, ) ) vs. ) ) ORDNANCE TECHNOLOGIES ) (NORTH AMERICAN) INC., ) ) Counter Defendant. ) _____ ) | No. CV 12-386-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Adjudication of the First, Second and Fourth Through Tenth Claims for Relief and/or For Partial Judgment on the Pleadings (Doc. 35). A response (Doc. 42) and a reply (Doc. 43) have been filed. Argument was presented to the Court on November 25, 2013.

*Factual and Procedural Background*

Ordnance Technologies (North America), Inc. (collectively, with it predecessor in interest Ordnance Technologies (UK) Limited, "Ordnance") alleges it owns the proprietary

1   and intellectual rights ("Ordnance Trade Secrets") to the design of the Laser Multiple
2   Warhead System ("LMWS"). Complaint (Doc. 1), p. 1-2. Ordnance alleges the LMWS is
3   a:

> competitively advantageous new technology because, among other things, LMWS: (1) is designed for the entire "soft/hard" target set; (2) significantly increases concrete penetration; (3) increases fragment performance; (4) increases blast overpressure; (5) increases fuzing performance; and (6) increases performance against soil overburdened hardened targets.

*Id*. at 3.

Ordnance also alleges that it worked with Raytheon Missile Systems (collectively, with Raytheon Company, "Raytheon"), beginning in the early 1990s, on Multi Warhead/Multi Mission Warhead programs. Ordnance invested considerable sums on the research and development on warhead design, modeling and business development with the understanding it would remain the Warhead System Design Authority on the Multi Warhead/Multi Mission Warhead programs and that any intellectual property rights it created would remain the property of Ordnance. However, by virtue of multiple agreements between Ordnance and Raytheon, Raytheon was, and is, knowledgeable about numerous aspects of Ordnance's business including trade secrets and that Raytheon was obligated to refrain from using and/or misappropriating Ordnance's trade secrets.

Ordnance further alleges that it and Raytheon entered into a Technical Assistance Agreement ("2002 TAA"), in which Raytheon agreed to provide Ordnance with technical data and defense services related to the integration of the LMWS for use in the Tactical Tomahawk Cruise Missile and agreed not to disclose or use any proprietary information belonging to Ordnance. Raytheon asserts it entered into the 2002 TAA for the purpose of seeking United States Department of State approval for Raytheon to share technical data with Ordnance for the purposes of complying with the International Traffic in Arms Regulations ("ITAR").

The 2002 TAA was amended in 2005 to include the parties' agreements that "(1) any manufacturing of the LMWS would only be completed by [Ordnance] subcontractors; (2) [Ordnance] held full ownership of the design and manufacturing rights of the LMWS; and

- 2 -

(3) Raytheon would not disclose nor use any proprietary information belonging to [Ordnance]." Complaint, Doc. 1, p. 4. Raytheon asserts it entered into the amendment for the purpose of seeking United States Department of State approval for Raytheon to share technical data with Ordnance for purposes of complying with ITAR.

Ordnance alleges Raytheon began generating briefings using proprietary data owned by Ordnance without acknowledging Ordnance. In response to a query from Ordnance, Raytheon stated in November 2005 that it had not passed on any data and had not, nor was it going to, misappropriate Ordnance's trade secrets for Raytheon's use.

On December 10, 2008, the Naval Air Systems Command ("NAVAIR") issued a Presolicitation Notice announcing its intention to negotiate and award a Joint Capability Technology Demonstration ("JCTD") contract for Joint Multi-Effects Warhead System ("JMEWS") to Raytheon. Raytheon's Statement of Material Facts ("RSOF"), Ex. 1 (Doc. 37-1).

Ordnance alleges it learned in 2009 that Raytheon had entered into the JMEWS Project with the United States government to modify the Tactical Tomahawk Cruise Missile to enable it to a "multi-effects" system. Ordnance alleges, upon information and belief, that the JMEWS Project:

> (1) is designed for the entire "soft/hard" target set; (2) significantly increases concrete penetration; (3) increases fragment performance; (4) increases blast overpressure; (5) increases fuzing performance; and (6) increases performance against soil overburdened hardened targets.

Complaint (Doc. 1), p. 5. Ordnance further alleges Raytheon currently unlawfully possesses and is using Ordnance Trade Secrets, has and will continue to access Ordnance Trade Secrets in connection with the JMEWS Project, and other third parties are acting in concert with Raytheon.

On January 19, 2009, Raytheon received a letter ("January 2009 Infringement Letter") from Ordnance regarding "Raytheon Missile System Company Infringement of Ordnance Technologies (NA), Inc. ([Ordnance]) proprietary warhead design for Tomahawk." RSOF, Ex. 2 (Doc. 37-2). The January 2009 Infringement Letter asserted that Ordnance "has strong

- 3 -

and compelling evidence to support that the Raytheon Precision Strike Organization has infringed on our intellectual property rights and proprietary Tomahawk multi-effects warhead designs." *Id*.

Raytheon responded to Ordnance in letters dated March 9, 2009, and May 1, 2009. Approximately eleven months letter, Ordnance sent two more letters to Raytheon; the letters were dated April 2, 2010, and April 5, 2010. In its April 5, 2010, letter, Ordnance requested mediation of its claim by an independent agency. An April 29, 2010, letter from Raytheon suggested a meeting between counsel to discuss the allegations; Counsel for Raytheon requested counsel for Ordnance contact him to schedule a meeting. Representatives of Ordnance and Raytheon met in June 2010.

On May 18, 2012, Ordnance filed an action against Raytheon Company alleging claims of (Count 1) Statutory Misappropriation of Trade Secrets, (Count 2) Common Law Misappropriation of Trade Secrets, (Count 3) Breach of Contract, (Count 4) Breach of Implied Contract, (Count 5) Breach of Implied Covenant of Good Faith and Fair Dealing, (Count 6) Unjust Enrichment, (Count 7) Conversion, (Count 8) Interference with Contract or Business Expectancy, (Count 9) Unfair Competition, and (Count 10) a violation of the Lanham Act. Complaint (Doc. 1).

Raytheon filed an Answer and Counterclaim (Doc. 13) on September 13, 2012. Raytheon asserts that, during the course of their relationship with Ordnance, each shared information with the other (including proprietary information) under terms of confidentiality. However, Raytheon denies it has attempted to convert or manipulate Ordnance Trade Secrets for its own use. Raytheon's Answer included affirmative defenses of failure to state a cause of action, statute of limitations, independent development, ownership, laches, waiver/estoppel, acquiescence, and failure to mitigate. In its counterclaim, Raytheon asserts a Declaration of Ownership. In its October 9, 2012 Answer to Counterclaim (Doc. 18), Ordnance states failure to state a claim, failure to comply with conditions precedent, statute of frauds/parol evidence rule, laches, and counter claimants' own material breaches as affirmative defenses.

On May 30, 2013, Raytheon filed a Motion for Summary Adjudication of the First, Second and Fourth Through Tenth Claims for Relief and/or For Partial Judgment on the Pleadings (Doc. 35). An Opposition to Motion for Partial Summary Judgment and/or Partial Judgment on The Pleadings; Fed.R.Civ.P. Rule 56(d) Request for Continuance And/or Denial Of Motion (Doc. 42) and a Reply (Doc. 43) have been filed.[1]

*Fed.R.Civ.P. 56(d)*

The applicable rule states:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d).

Ordnance points out that, although the burden is normally on the party seeking the continuance to demonstrate that the information sought exists, and that it would raise an issue of material fact foreclosing summary judgment, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1997), *citations omitted*; *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades Dist. Council*, 817 F.2d 1391, 1395 (9th Cir. 1987), "where . . . no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes*, 323 F.3d 767, 774 (9th Cir. 2003). Ordnance asserts Raytheon has not produced a single document in this matter and requests

---

[1] Ordnance untimely submitted a statement of facts and supporting documentation. *See* Docs. 52, 53, and 54. However, the Court ordered those documents stricken as untimely filed. *See* Doc. 59. However, some of those same documents are before the Court through the filings of Raytheon. *See* Doc. 43.

- 5 -

Case 4:12-cv-00386-CKJ   Document 85   Filed 02/26/14   Page 6 of 15

Raytheon's motion be denied or continued pursuant to Fed.R.Civ.P. 56(d).

Raytheon asserts, however, that Ordnance knew of Raytheon's intention to file this motion as of January 18, 2013, when counsel had an in-person conference. Despite that knowledge and the service by Raytheon of its March 25, 2013, Initial Disclosures (including the categories of documents on which Raytheon intends to rely and the specific identification of the January 2009 Infringement Letter), Raytheon asserts Ordnance has not served a single discovery request. Indeed, during the Rule 16 Case Management hearing, this Court set deadlines for the completion of discovery. *See* Docs. 23 and 24. The issuance of the scheduling order afforded counsel the opportunity to establish discovery priorities. *See* Fed.R.Civ.P. 16 Advisory Notes. Where, as here, Ordnance does not dispute Raytheon's assertion it did not serve any discovery requests prior to the filing of the pending motion, the Court concludes it is only because of Ordnance's lack of diligent prosecution of the case that has resulted in Raytheon's failure to provide discovery.

Initial disclosures are to include "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed.R.Civ.P. 26(a)(1)(A)(ii). Providing the description and then waiting for a request pursuant to Fed.R.Civ.P. 34 may not be the most efficient way to provide disclosures, "a listing of the materials by category [] suffices. The objective of such a listing is to enable the other parties to make informed decisions about which documents they should request be produced pursuant to Rule 34, and to enable them to frame document requests that will avoid squabbles about wording." 8A Fed. Prac. & Proc. Civ. § 2053 (3d ed. April 2013).

Unlike the defendant in *Burlington N. Santa Fe R.R. Co.*, Raytheon provided information in its initial disclosures from which Ordnance could (and should) have made its discovery requests. Nonetheless, Ordnance failed to do so – indeed, Ordnance does not dispute Raytheon's assertion that no discovery requests have been made. Moreover, where the issue addressed by the Order herein focuses on the statutes of limitations, it does not

1  appear Ordnance's ability to respond to the pending motion has been prejudiced by the lack
2  of discovery. Permitting Rule 56(f) relief where no effort to seek discovery has been made,
3  would simply indicate a party does not have to take any steps to prosecute its action. The
4  Court declines to do so and will deny this request.

*Statutes of Limitations*

Raytheon asserts that, although the statutes of limitations for Ordnance's First, Second, and Fourth through Tenth claims for relief are not greater than three years, the action was not filed until three years and four months after Ordnance sent a formal written notice to Raytheon that Ordnance allegedly had "strong and compelling evidence to support that the Raytheon Precision Strike Organization has infringed on [Ordnance] intellectual property rights and proprietary Tomahawk multi-effects warhead designs." Motion, Doc. 35, p. 4, *citing* RSOF, Ex. 2 (Doc. 37-2). Ordnance does not dispute that the statutes of limitations at issue are not greater than three years.. *See* A.R.S. § 44-406.

*Statute of Limitations – Sufficient Evidence of Accrual Date*

Ordnance argues that a statute of limitations accrual date cannot be established. Ordnance points out that even if the relevant dates in the complaint are beyond the statutory period, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998), *quoting Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *see Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Indeed, because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, *Hernandez*, 138 F.3d at 402, *citation omitted*, Ordnance argued there is insufficient evidence to resolve this issue. *See e.g., Briese Lichttechnik Vertriebs v. Langton*, 2012 U.S. Dist. LEXIS 160535, *16 (S.D. N.Y. 2012) (Court order precludes defendant from utilizing on summary judgment any document not produced in discovery]; *Underpinning & Foundation Skanska, Inc. v. Travelers Cas. &*

- 7 -

1  *Surety Co. of Am.*, 726 F.Supp.2d 339, 348-349 (S.D. N.Y. 2010) (On summary judgment motion, party not permitted to rely on damages calculation supported by documents not produced in discovery). The January 2009 letter establishes that Ordnance knew of an alleged infringement as of January 19, 2009.

Additionally, Ordnance argues that a determination as to the accrual date requires a factual determination as to what the sender knew and was trying to communicate as of the date of the January 2009 Infringement Letter. *Sokol Crystal Products v. DSC Communications*, 15 F.3d 1427, 1430 (7th Cir. 1994) ("… these apprehensions were still just concerns and suspicions rather than knowledge of misuse. They therefore do not start the clock of the statute of limitations. Sokol did not know that DSC was misusing (and therefore misappropriating) its trade secret until DSC sold an ECS-3 system (containing a VCXO that resembled Sokol's) to a third party."). Indeed, the determination of the accrual date depends on "who knew what, when it became known, and what triggered such knowledge… ." *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Anderson L.L.P.*, 175 F.Supp.2d 1180, 1198 (D. Az. 2001). Ordnance asserts that in a complex case regarding multiple warhead designs, multiple warhead manufacturing, and the allegation that the design process – not just an individual design – was misappropriated, the January 2009 Infringement Letter standing alone simply does not evidence the sender's knowledge.

Raytheon disputes Ordnance's assertion that the allegations in its Complaint and trade secret disclosure are broader than the claims made in its January 2009 Infringement Letter. Raytheon argues that Ordnance's assertion that the 2009 Infringement Letter only accused Raytheon of misappropriating a specific warhead design, while the Complaint alleges Raytheon misappropriated both the design and the design process is a false distinction. Raytheon argues that, in Arizona "a statute of limitations begins to run when the plaintiff discovers or reasonably should have discovered facts giving rise to his/her claim." *Giles Const., Inc. v. Commercial Fed. Bank*, No. CIV 04-258-TUC-CKJ, 2006 WL 2711501, *8 (D. Ariz. Sept. 21, 2006), *citations omitted*. Raytheon asserts, therefore, that a statute of limitation will apply even where the plaintiff does not have actual or complete knowledge

of its claims but, rather, "knew, or should have known with the exercise of due diligence" of information that would give rise to the claim. *Id*. at *9. Raytheon asserts the information in Ordnance's possession at the time of the 2009 Infringement Letter should have given rise to the claims now made in this litigation through reasonable diligence, as Ordnance's correspondence and allegations suggest Raytheon could not have created its design as quickly as it did without using Ordnance's allegedly trade secret design process.

Ordnance argues the January 2009 letter does not address the predicate facts to show a knowledge of all of the claims. For example, Ordnance argues the unfair competition extends beyond merely the infringement of the trade secret. However, all of the claims have as their basis the alleged infringement. Ordnance knew of the alleged misappropriation in January 2009. The extent of the misappropriation or the use of the misappropriation does not change this fact. The Court finds the statute of limitations began to run on January 19, 2009 as to the First, Second, and Fourth through Tenth Claims of the Complaint. The Court will grant partial summary judgment in favor of Raytheon as to these claims.

*Statute of Limitations – Equitable Tolling/Equitable Estoppel*

Although federal law determines when a cause of action accrues, state law governs whether the statute of limitations has been tolled. *Wilson v. Garcia*, 471 U.S. 261 (1985); Cyclopedia of Federal Procedure § 15.521, Governing law (2014). Arizona courts recognize equitable tolling when a defendant fraudulently conceals a cause of action from a plaintiff. *Porter v. Spader*, 225 Ariz. 424, 239 P.3d 743 (App. 2010). To toll the statute of limitations, a defendant must have prevented the plaintiff from discovering the claim within the limitations period by taking an affirmative action to conceal material facts that give rise to a cause of action. *Anson v. American Motors Corp.*, 155 Ariz. 420, 747 P.2d 581 (App. 1987). It is a plaintiff's burden to establish equitable tolling by showing diligent pursuit of its rights and the presence of some extraordinary circumstance standing in the way. *McCloud v. State*, 217 Ariz. 82, 85, 170 P.3d 691, 694 (App. 2007); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). In *McCloud*, the court looked to federal cases for "examples

1   of situations in which a party might qualify for equitable tolling." 217 Ariz. at 87.[2]

2   Ordnance argues that, although Raytheon promised to provide documents to Ordnance
3   showing that it had not misappropriated any Ordnance trade secrets, and that it would also
4   "further investigate" the matter, Raytheon never provided any documents to Ordnance
5   despite its representations, and never contacted Ordnance regarding any investigative
6   findings. Ordnance argues, therefore, that the statute of limitations is tolled. Indeed, "the
7   recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth,
8   although he might have ascertained the falsity of the representation had he undertaken an
9   investigation." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040 (9th Cir. 2003), *internal*
10  *quotation marks omitted*.

11  Raytheon asserts that although Ordnance asserts both equitable estoppel and equitable
12  tolling, there is no evidence of any conduct by Raytheon that caused Ordnance to forego
13  litigation or be unable to determine the existence of a claim. *See Lukovsky v. City & County*
14  *of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (where a reasonable plaintiff would
15  not have known of the existence of a possible claim within the limitation period, then
16  equitable tolling may serve to extend the statute of limitation; equitable estoppel requires a
17  plaintiff to submit evidence of actions taken by a defendant to prevent a plaintiff from filing
18  suit); *see also Roer v. Buckeye Irr., Co.*, 167 Ariz. 545, 809 P.2d 970, 972 (Ariz.App.1990)
19  (stating that "[a] defendant will be estopped from asserting the defense of statute of
20  limitations if by its conduct the defendant induces the plaintiff to forego litigation ..."). 
21  Raytheon asserts that the January 2009 Infringement Letter was based on Ordnance's
22  knowledge of its claims. Raytheon argues that conduct alleged by Ordnance:

23  (i) "suggested that [Ordnance] was not included in a Joint Capability Technology
    Demonstration Contract for the Joint Multi-Warhead Program … because of faulty
24  prior tests of [Ordnance]-designed warheads"; (ii) "intimated there were 'personnel
    issues' between certain [Ordnance] and Raytheon employees"; and (iii) "promised to
25

---

26  [2]In the unpublished case *State v. Rodriguez*, 2012 WL 2839916 (Ariz.App. July 11,
27  2012), the court cited *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), for its discussion of the
    equitable tolling of federal habeas time limits. In that case, the Supreme Court has held that a
28  parties' lack of diligence may prohibit equitable remedies.

- 10 -

>provide documents to [Ordnance] showing that it had not misappropriated any [Ordnance] trade secrets."

Reply (Doc. 43), p. 5, *quoting* Response (Doc. 42), pp. 3-4. Raytheon asserts that Ordnance does not explain how these topics constitute misrepresentations or induced Ordnance to forego litigation.

Further, Raytheon argues that Ordnance delayed by nearly a year before replying to Raytheon's May 1, 2009 letter. *See* April 2, 2010 Letter (Doc. 43-2). Even then, Raytheon asserts that none of its positions were a surprise to Ordnance and are not evidence of efforts to conceal or otherwise cause Ordnance to forego litigation. In fact, Raytheon asserts Ordnance is a sophisticated entity and it could have sought a tolling agreement if desired. Rather, Ordnance simply did not file this lawsuit until almost two years after the June 2010 meeting and almost three and one-half years after the January 2009 Infringement Letter.

There is no evidence of any Raytheon conduct before the Court that caused Ordnance to forego or delay litigation. Rather, it appears Raytheon timely responded to Ordnance's January 2009 Infringement Letter and it was Ordnance that delayed in following-up on the issue. When Ordnance did follow-up nearly one year later, Ordnance did not take any further action after representatives of the parties met. Even if the Court were to consider information provided by Ordnance that Raytheon stated it would investigate and get back to Ordnance,[3] the Court finds that Raytheon's conduct did not induce Ordnance "to forego litigation by leading plaintiff to believe a settlement or adjustment of the claim will be effected without the necessity of bringing suit." *McCloud*, 217 Ariz. at 86, 170 P.3d at 695 (quoting *Roer*, 167 Ariz. at 547 n. 1).

Rather, Ordnance's claims as to Raytheon's conduct do not constitute allegations of concealment or misrepresentations by Raytheon that caused Ordnance to forego or delay litigation. *See Roer*, 167 Ariz. at 547 ("One cannot rely upon mere non-committal acts of another party to establish an estoppel against a party who raises the statute as a defense.").

---

[3]The documents containing this information was stricken by the Court. *See* Doc. 59.

- 11 -

1    Indeed, unlike in *Ra Medical Systems, Inc. v. PhotoMedex, Inc.*, 373 Fed.Appx. 784, 786-87
2    (9th Cir. 2010), where a party may have hid a "misappropriation by denying that the design
3    plan" and the opposing party relied on those obscuring actions, Raytheon did not obscure
4    anything from Ordnance.  *See also Grundy v. JPMorgan Chase Bank*, No.
5    CV–10–1542–PHX–DGC, 2012 WL 3028341 * 2 (D.Ariz. July 24, 2012) (burden was not
6    met where no evidence was presented that defendant had lied to plaintiffs).  The Court finds
7    Ordnance has failed to establish fraudulent concealment by Raytheon to equitably toll the
8    statutes of limitations.

*Statute of Limitations – Continuing Misappropriation*

Ordnance also asserts:

> While "… a continuing misappropriation constitutes a single claim," a continuing misappropriation must involve the same acts and alleged conduct. ARS § 44-407. Here, as discussed above, [Ordnance]'s claims are broader than the allegations in the Letter and involve substantially different breaches.  Accordingly, even if the statute of limitations did apply to the claims made in the Letter, [Ordnance]'s claims for misappropriation of trade secrets not alleged in the Letter are not time barred.

Response (Doc. 42), p. 7.  Ordnance also argues that another District of Arizona court has explicitly recognized a continuing breach theory in misappropriation claims – in other words, continuing acts into a limitations period will delay the accrual date of the statute of limitations.  *Merchant Transaction Systems, Inc. v. Nelcela, Inc.*, No. CV 02–1954–PHX–MHM, 2007 WL 2422052, *5, 2007 U.S. Dist. Lexis 62364, *17-20 (D.Ariz. 2007).  Similarly, Ordnance argues that a continuing breach theory applies to its other tort claims.  *Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1408-09 (7th Cir. 1993) (Continuing duty in non-compete contract); *AMTRAK v. Notter*, 677 F. Supp. 1, 5 (D.D.C. 1987) (Continuing duty to bill correctly for janitorial services); *Christmas v. Virgin Islands Water & Power Auth.*, 527 F. Supp. 843, 848, 18 V.I. 624 (D. V.I. 1981) (Continuous obligation to maintain and repair electrical lines); *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 940-41 (N.Y. App. Div. 2002) (Continuing obligation to provide code compliance for septic system).

1    Raytheon asserts, however, Ordnance incorrectly argues that Arizona law permits it
2 to assert a continuing breach in connection with its misappropriation claim. Contrary to
3 Ordnance's assertion, A.R.S. § 44-406 specifically provides that for the purposes of
4 applying the statute of limitation in an action for misappropriation, "a continuing
5 misappropriation constitutes a single claim." Raytheon cites to *Athletic Alt., Inc. v. Benetton
6 Trading USA, Inc.*, No. 5-1378, 174 Fed. App'x 571, 575-76 (Fed. 2006), not for its
7 precedential value (which, based on appellate rules, is none), but to, in effect, show it adopts
8 the holding in *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 645 (N.D. Cal. 1993)
9 (holding the continuing breach theory does not apply to extend the statute of limitations in
10 a case for misappropriation), a published case, and A.R.S. § 44-406. Because the case law
11 analyzing or discussing the Arizona Uniform Trade Secrets Act (the "AUTSA") is limited,
12 Raytheon asserts the Ninth Circuit's adoption of the holding in *Intermedics*, finding it to be
13 analogous to Arizona law (and no Arizona case to the contrary) is instructive.

14    Further, Raytheon asserts *Merchant*, relied upon by Ordnance, is contrary to A.R.S.
15 § 44-406 and is distinguishable. *Merchant* did not consider a continuing breach but, rather,
16 analyzes the tolling of the applicable statute of limitation because, in that case, the plaintiff
17 had made affirmative misrepresentations when entering into a settlement agreement. Rather
18 than holding any underlying or ongoing misappropriation constituted a continuing act that
19 tolled the statute of limitations, the court held that the settlement agreement constituted a
20 continuing act that tolled the statute of limitation.

21    As argued by Raytheon, the tolling in *Merchant* was based on an agreement rather
22 than an ongoing misappropriation. Furthermore, the Court agrees with Raytheon's reading
23 of A.R.S. § 44-406 – the three year limitations period starts when the misappropriation is
24 discovered (or by reasonable diligence should have been discovered) and a continuing
25 misappropriation is only one claim. Although jurisdictions treat continuing violations
26 differently, *see* 4 Callmann on Unfair Comp., Tr. & Mono. § 23:32 (4th ed. Dec. 2013)
27 (discussing different treatment of continuing violations), Arizona's statute is not ambiguous.
28 In other words, once the misappropriation is discovered, it does not matter if it is ongoing,

1  the period begins to run when it is discovered.

2  Raytheon also asserts that Ordnance's all-encompassing conclusion that the remaining
3  claims fail for similar reasons relies on cases (from the 7th Circuit, District of Columbia,
4  Virgin Islands, and New York state court) that discuss and analyze special circumstances in
5  which a contracting party owed a continuing duty – e.g., code compliance, maintenance,
6  installment contracts. Raytheon asserts those facts and analyses have no similarity to the
7  facts and claims, each arising from Ordnance's allegations of misappropriation, of this case.
8  Rather, Raytheon argues that A.R.S. § 44-406 and *Intermedics* require a conclusion that a
9  continuing misappropriation under the AUTSA constitutes a single claim, and the continuing
10 breach theory does not apply.

11 Ordnance's claims are based on the alleged misappropriation, not based on some other
12 conduct (e.g., code compliance). In light of A.R.S. § 44-406 and the well-reasoned analysis
13 in *Intermedics* (and its approval by the Ninth Circuit in a non-published case), the Court
14 agrees with Raytheon and finds the ongoing conduct does not extend the statute of limitations
15 as to the other tort claims.

16

17 *Judgment on the Pleadings*

18 Alternatively, Raytheon moves for judgment on the pleadings pursuant to
19 Fed.R.Civ.P. 12(c) because Ordnance's six common law tort claims are pre-empted by its
20 First Claim for Relief for Statutory Misappropriation of Trade Secrets; *see also Food Servs.*
21 *of Am. Inc. v. Carrington*, No. CV-12-175-PHX-GMS, 2013 WL 424507, *2 (D. Ariz., Feb.
22 04, 2013)). The Court having determined partial summary judgment in favor of Raytheon
23 as to the First, Second, and Fourth through Tenth claims of the Complaint based on the
24 statute of limitations is appropriate, the Court declines to address this alternative request.

25 Accordingly, IT IS ORDERED:

26 1.  Ordnance's Rule 56(d) Request for Continuance And/or Denial Of Motion
27 (Doc. 42) is DENIED.

28 2.  Raytheon's Motion for Summary Adjudication of the First, Second and Fourth

Through Tenth Claims for Relief and/or For Partial Judgment on the Pleadings (Doc. 35) is GRANTED.  Partial summary judgment is awarded in favor of Raytheon and against Ordnance as to the First, Second, and Fourth through Tenth claims of the Complaint.

3. Counsel having previously indicated they may be interested in a settlement conference, *see* Doc. 51, counsel shall submit a joint settlement status report to the Court within 14 days of the date of this Order advising the Court (1) if the parties seek referral to a magistrate judge at this time for settlement proceedings and (2) if the parties are able to agree upon a specific magistrate judge for settlement proceedings and the name of any mutually agreed upon magistrate judge.

4. Some attachments of Raytheon's Declaration of John Horn in Support of Motion for Summary Adjudication of the First, Second and Fourth Through Tenth Claims for Relief And/or For Partial Judgment on the Pleadings not being viewable on the Court's electronic filing system, *see* Doc. 43-2, Raytheon shall refile this document within ten days of the date of this Order.

DATED this 25th day of February, 2014.

_____
Cindy K. Jorgenson
United States District Judge