**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ORDNANCE TECHNOLOGIES
(NORTH AMERICA) INC.,           )
                                )
          Plaintiff,            )
                                )
vs.                             )           No.  CV 12-386-TUC-CKJ
                                )
RAYTHEON COMPANY,               )
                                )
          Defendant.            )           **ORDER**
                                )
_____)
                                )
RAYTHEON COMPANY AND            )
RAYTHEON MISSILE SYSTEMS,       )
                                )
          Counterclaimants,     )
                                )
vs.                             )
                                )
ORDNANCE TECHNOLOGIES           )
(NORTH AMERICAN) INC.,          )
                                )
          Counter-defendant.    )
_____)

          Pending before the Court is Defendant's Motion for Summary Judgment on Plaintiff's

Third Claim for Relief (Doc. 95).[1]  Argument was presented to the Court on January 30,

2015.

_____

[1]Defendant's Motion for Sanctions (Doc. 116) is addressed in a separate order.

1

2      I. *Factual and Procedural Background*

3          Ordinance Technologies (North America), Inc. (collectively, with its predecessor in

4      interest Ordinance Technologies (UK) Limited, "OTNA") alleges it owns the proprietary and

5      intellectual rights to the design of the Laser Multiple Warhead System ("LMWS").

6      Complaint (Doc. 1), p. 1-2.

7          The parties state that OTNA worked with Raytheon Missile Systems (collectively,

8      with Raytheon Company, "Raytheon"), beginning in the early 1990s, on Multi

9      Warhead/Multi Mission Warhead programs.  OTNA has alleged it invested considerable

10     sums on the research and development of warhead design, modeling and business

11     development with the understanding it would remain the Warhead System Design Authority

12     on the Multi Warhead/Multi Mission Warhead programs and that any intellectual property

13     rights it created would remain the property of OTNA.  However, by virtue of multiple

14     agreements between OTNA and Raytheon, Raytheon was, and is, knowledgeable about

15     numerous aspects of OTNA's business including trade secrets and OTNA alleges that

16     Raytheon was obligated to refrain from using and/or misappropriating OTNA's trade secrets.

17         The parties agree OTNA and Raytheon entered into a Technical Assistance

18     Agreement ("TAA"), in which Raytheon agreed to provide OTNA with technical data and

19     defense services related to the integration of the LMWS for use in the Tactical Tomahawk

20     Cruise Missile.  The TAA was amended in 2005 ("Amended TAA").  The Amended TAA

21     stated that Raytheon held no rights to the proprietary data at issue in this case and that OTNA

22     the full ownership rights of proprietary data at issue in this case.

23         The Complaint states that OTNA's "concerns first began to rise" about Raytheon's

24     alleged improper use of proprietary data in 2005. Complaint, ¶ 22.   OTNA sent

25     correspondence to Raytheon in November 2005, which included the following:

26         11/16/2005 Email from OTNA principal Stephen Cardy [("Cardy"] to Raytheon Sr.

27         Design Engineer Matt Buchanan [("Buchanan")]:

28             "OTL intend (sic) to fulfill its current contractual and legal obligations to

Raytheon. . . . We will also be seeking formal undertakings regarding use of [OTNA] proprietary data provided to Raytheon. It is OTL's wish to resolve the current situation. . . ."

11/17/2005 Letter from Stephen Cardy to Matt Buchanan:

"I would suggest that Raytheon review the TAA content in full as if this is a 'formal' US DOD approved document the legal position of OTL is without question. . . . OTL have not withheld design data, manufacturing data or modelling data and very much regarded the program as a team effort and did not perceive Raytheon as a competitor in terms of the warhead system or elements of it. It may be that OTL has been commercially naive but now there is an opportunity to identify where exactly OTL sits regarding the program."

01/09/2006 Email from Stephen Cardy to Matt Buchanan:

"I have had meetings with OTL staff and our legal advisors. . . . As you are aware OTL spent some 2 years defending its IPR [intellectual property rights] against claims from SEI Italy. . . . Following discussions with our legal advisors on the current position, their advice was that we should explore some form of arbitration with Raytheon rather than enter into another potential lengthy legal conflict."

Raytheon Statement of Facts ("RSOF"), Exs. 5-7 (Docs. 97-5, 97-6, 97-7).

During his deposition, Cardy testified that, in 2005, Raytheon had not breached an agreement, but that there were concerns over trusting Raytheon. Cardy Depo. (Doc. 147-1), 35:5-9. Cardy clarified that the concern was that Raytheon "[w]as going to violate the TAA." Cardy Depo. (Doc. 147-1), 37:6. In a declaration subsequently provided by Cardy, Cardy summarized the circumstances in which he sent the aforementioned correspondence. Cardy stated: "At the time I sent this correspondence, neither myself nor anyone else at OTL believed that Raytheon was in breach of any contract between OTL and Raytheon, including the Amended TAA. Rather, I was seeking an understanding regarding OTL's future role with Raytheon in the MWS space." Cardy dec. (Doc. 108-1), pp. 3-4.

On May 18, 2012, OTNA filed an action against Raytheon Company alleging claims of (Count 1) Statutory Misappropriation of Trade Secrets, (Count 2) Common Law Misappropriation of Trade Secrets, (Count 3) Breach of Contract, (Count 4) Breach of Implied Contract, (Count 5) Breach of Implied Covenant of Good Faith and Fair Dealing, (Count 6) Unjust Enrichment, (Count 7) Conversion, (Count 8) Interference with Contract or Business Expectancy, (Count 9) Unfair Competition, and (Count 10) a violation of the

1   Lanham Act.  Complaint (Doc. 1).  Raytheon filed an Answer and Counterclaim (Doc. 13)

2   on September 13, 2012.

3          On May 30, 2013, Raytheon filed a Motion for Summary Adjudication of the First,

4   Second and Fourth Through Tenth Claims for Relief and/or For Partial Judgment on the

5   Pleadings (Doc. 35).  The Court granted this motion on February 26, 2014.  OTNA's Count

6   Three alleging a Breach of Contract is the only remaining claim from OTNA's Complaint.

7   On January 3, 2014, this Court determined that the Count Three Breach of Contract claim

8   as alleged in the Complaint includes only the TAA and the Amended TAA.

9          On June 18, 2014, a Motion for Summary Judgment on Plaintiff's Third Claim for

10  Relief was filed by Raytheon (Doc. 95).  OTNA has filed an Opposition (Doc. 108) and

11  Raytheon has filed a Reply (Doc. 145).  Argument was presented to the Court on January 30,

12  2015.

13

14  II.  *Motion for Summary Judgment Standard and Controverting Statement of Facts*

15         The parties have each made objections to the other party's statements of facts.  A

16  motion for summary judgment is to set forth the specific facts (with reference to a specific

17  admissible portion of the record where the fact may be found) on which a party relies

18  separately from the memorandum of law.  L.R.Civ. 56.1.  Furthermore, the specific facts are

19  to be set forth in serial fashion and not in narrative form.  *Id.*

20         Summary judgment may be granted if the movant shows "there is no genuine issue

21  as to any material fact and that the moving party is entitled to judgment as a matter of law."

22  Fed.R.Civ.P. 56(c).  The disputed facts must be material. *Celotex Corp. v. Catrett*, 477 U.S.

23  317, 322-23 (1986).  Therefore, the nonmoving party must demonstrate a dispute "over facts

24  that might affect the outcome of the suit under the governing law" to preclude entry of

25  summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).   A dispute

26  over material facts must be genuine.  *Id.*  A dispute about a material fact is genuine if "the

27  evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

28         A party opposing a properly supported summary judgment motion must set forth

specific facts demonstrating a genuine issue for trial. *Id.* Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts'"). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. However, the relevant facts are to be determined and inferences drawn in favor of the nonmoving party "*to the extent supportable by the record*[.]" *Scott v. Harris*, 550 U.S. 372 n. 8 (2007).

The Court is not to make credibility determinations with respect to the evidence offered and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987), citing *Matsushita Elec.*, 475 U.S. at 587 (1986). Summary judgment is not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts[.]" *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980).

Further, declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991). As pointed out by Raytheon, when a declaration grossly contradicts the allegations of the Complaint, the evidence, and the declarant's own sworn testimony, such a declaration may be a sham. *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (holding that the plaintiff sought to create "sham issues of fact" for the first time in her affidavit and directly contradicted her prior deposition testimony); *Christopher v. Spectra Elec. Services, Inc.*, No. CV-12-00345–PHX–DGC, 2012 WL 5471779, **1-2 (D.Ariz., Nov. 09, 2012) ("a party cannot create an issue of fact to avoid summary judgment by submitting an affidavit that flatly contradicts prior sworn testimony").

1     The Court will not specifically address each dispute, but will only consider admissible

2     evidence that is supported by specific facts that may show a genuine issue of material fact

3     in resolving the issues.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

4     2505, 2510 (1986).   As to the Cardy deposition and declaration, the Court finds the

5     statements regarding the statute of limitations issue are not directly contradictory.  In the

6     deposition, Cardy stated that Raytheon had not breached an agreement, but that there were

7     concerns over trusting Raytheon.  This statement is consistent with Cardy's statement in the

8     declaration that OTNA did not believe Raytheon was in breach of any contract at the time

9     of the correspondence. However, to any extent Cardy's declaration contradicts his deposition

10    testimony, the Court will not consider those portions of his declaration in ruling on the

11    pending motion.

12

13    III.  *Statute of Limitations*

14    The parties agree that a six year statute of limitations applies to the breach of contract

15    claim.  A.R.S. § 12-548.  Raytheon argues that OTNA's conduct in November 2005 alleging

16    the improper use of proprietary data establishes that OTNA believed it had a claim as of late

17    2005 and early 2006.  OTNA asserts the references to proprietary issues were in the context

18    of an ongoing discussion between the parties about performance under the contract.

19    OTNA points out the correspondence does not accuse Raytheon of a breach of

20    contract and, in fact, reaffirms the contract.  OTNA argues that a breach of contract cause of

21    action does not accrue until a plaintiff discovers or should have discovered by reasonable

22    diligence circumstances establishing breach. *Gust, Rosenfeld & Henderson v. Prudential Ins.*

23    *Co. of America*, 182 Ariz. 586, 588 (1995).  At a minimum, OTNA argues that triable issues

24    of fact exist which preclude summary judgment on the statute of limitations issue. *Gust*, 182

25    Ariz. at 591 ("When discovery occurs and a cause of action accrues are usually and

26    necessarily questions of fact for the jury.").

27    OTNA asserts that the correspondence was addressing concerns as to the results of

28    a field "sled test" at Pendine in November 2005 ("Pendine test") and cost increases and

1    expenses (and their allocation).  Further, OTNA asserts the parties continued performing

2    under the contract.  Additionally, the correspondence and the subsequent conduct of the

3    parties shows an ongoing contractual relationship that was expected to continue.  Impliedly,

4    this is as opposed to a relationship that was terminated because of a belief of a breach of

5    contract.  OTNA asserts the evidence shows that, after the correspondence, Raytheon

6    reassured OTNA of an ongoing relationship, the parties continued to work together.  In other

7    words, OTNA asserts it "had no knowledge of any breach of contract, because in fact that

8    contract was not breached, and was instead reaffirmed by word and deed at the time."

9        Raytheon asserts that the results of Pendine test are not material because OTNA

10   admits this test was conducted under a separate contract.  However, consideration of the

11   context of the correspondence is appropriate.   Although Raytheon asserts the Cardy

12   declaration should be disregarded because it contradicts his deposition testimony, other

13   evidence supports OTNA's argument.  The deposition testimony of Buchanan indicates

14   discussions occurred between Raytheon and OTNA as to ongoing responsibilities.  The

15   allegations in the Complaint show that OTNA had concerns about Raytheon's use of OTNA

16   proprietary data and had asked Raytheon in November 2005 if Raytheon had passed on

17   OTNA propriety data.  *See e.g.* Complaint, Doc. 1, ¶¶ 22 and 23.

18       Raytheon asserts the Complaint and the correspondence establishes OTNA knew of

19   Raytheon's alleged use of proprietary data.  For example, the Complaint refers to Raytheon

20   briefings that used OTNA proprietary data.  However, the Complaint does not clarify what

21   type of briefings are being referred to – such reference in a briefing presented only to

22   Raytheon and OTNA personnel working jointly on a project may have different ramifications

23   than including such a reference in legal documents or presentations to third parties.

24   Raytheon also asserts the Court previously determined that OTNA knew of the alleged

25   misappropriation.  *See* February 26, 2014, Order, Doc. 85, pp. 7-9.  However, the Court's

26   statements in that Order were referring to knowledge of OTNA as expressed in a 2009

27   infringement letter, not knowledge as allegedly expressed in the 2005 correspondence.

28       In the Complaint, OTNA refers to concerns of OTNA as to Raytheon's use of

proprietary data.  Complaint, Doc. 1, ¶ 22.  This shows that OTNA had suspicions as to Raytheon's use of proprietary data.  The Court of Appeals of Arizona has stated that the "discovery rule is not intended to allow plaintiffs to ignore their suspicions and postpone their investigations.  Indeed, plaintiffs have a 'duty to investigate with due diligence to discover the necessary facts.'"  *Forrer v. Johansen*, 1 CA–CV 10–0712, 2011 WL 3209844 *3 (Ariz.App. July 28,  2011) (citations omitted).  Further, the language of the correspondence is even more conclusive.  For example, the correspondence refers to the use of OTNA propriety data provided to Raytheon.  RSOF, Ex. 5, November 16, 2005 Email from Cardy to Buchanan (Doc. 97-5).  The correspondence also refers to discussions with legal counsel as to whether OTNA should pursue legal action or arbitration.  RSOF, Ex. 7, January 9, 2006 Email from Cardy to Buchanan (Doc. 97-7).

While when a cause of action accrues is usually a question of fact for a jury, *Gust*, 182 Ariz. at 591, the issue should be decided as a matter of law when the evidence is insufficient to dispute the accrual of the statute of limitations.  *See generally Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 700 P.2d 840 (App. 1984).  Although other issues were raised in the correspondence, the 2005 and 2006 emails make clear that OTNA had concluded that Raytheon had improperly used the proprietary data.   Although Cardy's deposition testimony and declaration indicate that neither he nor anyone at OTNA believed Raytheon was in breach of any contract, the language of the correspondence indicates that he (and others at OTNA) believed Raytheon had improperly used proprietary data.  In other words, *OTNA knew of Raytheon's conduct or the facts giving rise to the claim* when Cardy sent the correspondence.  *See e.g. Matusik v. Dorn*, 157 Ariz. 249, 251, 758 P.2d 346, 349 (App. 1988) ("the cause of action does not accrue until the plaintiff knows, or in the exercise of reasonable diligence should know, of the injury"); *Logerquist v. Danforth*, 188 Ariz. 16, 932 P.2d 281 (App. 1996); *see also Little v. State*, 225 Ariz. 466, 240 P.3d 861, 864 (App. 2010).

Furthermore, contrary to OTNA's assertion, that the relationship continued between Raytheon and OTNA does not support OTNA's implication that the correspondence only

confirmed and clarified that ongoing relationship.  Rather, as stated by another district court:

> [Plaintiff] was certainly entitled to make this decision – that is, to decline to sue (or to even ask questions about its suspicions) in order to maintain its business relationship with [Defendant], and to wait instead . . . But this decision has consequences for statute of limitations purposes.

*AT Engine Controls Ltd. V. Goodrich Pump & Engine Control Systems, Inc.*, No. 3:10-cv-01539 (JAM), 2014 WL 7270160 (D.Conn. 2014) (without discussion, appears to agree claim for breach of contract for use of proprietary data is permitted).[2]

As a matter of law, the three emails establish that OTNA knew by no later than January 9, 2006, when Cardy informed Buchanan that OTNA preferred to arbitrate intellectual property disputes rather than engaging in a lengthy legal dispute, that it had discovered (or should have discovered with reasonable diligence) a claim against Raytheon regarding Raytheon's use of the proprietary data.  The statute of limitations had expired when the Complaint was filed on May 18, 2012.  Summary judgment in favor of Raytheon as to Count III, the breach of contract claim, is appropriate.

Accordingly, IT IS ORDERED:

1.      The Motion to File Exhibits and Unredacted Briefs Under Seal (Doc. 143 is GRANTED.  The Clerk of Court shall file the deposition transcript excerpts of Thomas Bootes, Matthew Buchanan, and Stephen Cardy, together with the unredacted version of Raytheon's Reply and Response to OTNA's Statement of Facts (Docs. 146 and 147) UNDER SEAL.

2.      The Motion for Summary Judgment on Plaintiff's Third Claim for Relief (Doc. 95) is GRANTED.

---

[2]OTNA could have alternatively chose to terminate the agreement with Raytheon.  *See e.g., PharMetrics, Inc. v. Source Healthcare Analytics, Inc.*, 21 Mass.L.Rptr. 526 (Mass Super. 2006) (right to terminate agreement if confidential information is disclosed inappropriately).

3.      The parties shall file a Joint Pre-Trial Statement as to the pending counterclaim for a declaratory judgment on or before April 17, 2015.  Alternatively, the parties shall submit a status report explaining why a Joint Pre-Trial Statement should not be filed at this time on or before April 17, 2015.

DATED this 13th day of March, 2015.

Cindy K. Jorgenson
United States District Judge